# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

TYRONE SAMUEL FIELDS,          )
                               )
  Movant,            )
                               )
v.                             )  Case No. CV411-044
                               )      CR409-147
UNITED STATES OF AMERICA,      )
                               )
  Respondent.         )

## **REPORT AND RECOMMENDATION**

Tyrone Fields has filed a motion under 28 U.S.C. § 2255 challenging the 262-month sentence this Court imposed following the acceptance of his guilty plea to a crack cocaine conspiracy charge. Doc. 1.[1] Fields claims, *inter alia*, that his attorney was ineffective in failing to file a direct appeal after being requested to do so. *Id.* at 5-8. The government submitted an affidavit from defense counsel, Gregory N. Crawford, denying that Fields ever asked him to file an appeal. The Court then scheduled an evidentiary hearing to resolve this factual

---

[1] Unless otherwise noted, citations are to the docket in Fields' civil § 2255 case, number CV411-044. "Cr. doc." refers to documents filed under his criminal case, CR409-147. Additionally, page references are to the CM/ECF screen page rather than the referenced document's own internal, printed pagination.

dispute and appointed counsel to represent Fields at that hearing. Because Fields has not shown that he is entitled to an out-of-time appeal, the Court will proceed to address all of the claims raised in his § 2255 motion.

## I.   BACKGROUND

Fields now challenges a 262-month sentence imposed in the underlying criminal case, CR409-147, but that sentence was informed by an earlier conviction.   In November 2008 Fields was indicted as one of 45 defendants in a large drug conspiracy case.   *United States v. Smalls*, No. CR408-315, (S.D. Ga. Nov. 10, 2008).   The *Smalls* indictment charged Fields with conspiracy, possession of a firearm while a convicted felon, possession of a firearm in furtherance a drug trafficking crime, and using a telephone to facilitate the conspiracy.   *Id.*, doc. 3.   On February 23, 2009, he pled guilty to a lesser included drug conspiracy offense in exchange for the dismissal of the remaining charges.   *Id.*, doc. 396. Fields was permitted to remain free on a $50,000 appearance bond.   *Id.*, doc. 449.

Not long after the ink had dried on the plea agreement in *Smalls*, Fields violated the conditions of his pretrial release in that case by

participating in a second drug conspiracy.[2]   A federal grand jury indicted Fields on June 4, 2009 for his participation in the new drug conspiracy, and he was arrested not long thereafter.   Cr. doc 3 (indictment); cr. doc. 6 (arrest warrant return).   On August 5, 2009, by superseding indictment, Fields was also charged with actual distribution of cocaine base.   Cr. doc. 63.   He pled guilty to the second drug conspiracy on October 14, 2009 in exchange for the dismissal of the distribution counts.   Cr. doc. 78.

On December 7, 2009, the Court imposed a 135-month sentence for the original drug conspiracy.   *Smalls*, No. CR408-315, doc. 823.   Because of that conviction, Fields qualified as a career offender under USSG § 4B1.1 at the time of his later sentencing (on February 22, 2010) for the second drug conspiracy charge.   PSI ¶ 35 (CR409-147) (noting that Fields had accumulated 2 felony drug convictions).   By operation of the career offender provision, Fields was assigned a criminal history category of VI (up from Category II in the *Smalls* case), so the Guidelines called for a significantly heightened 262-327 month sentence.   PSI ¶ 51.   The sentencing judge imposed a 262-month sentence set to run concurrently with his 135-month sentence in *Smalls*.   Cr. doc. 92.   Fields did not file a

---

[2] He sold several ounces of marijuana, crack cocaine, and powder cocaine to his cousin, David Foye, between May and June of 2009.   Presentence Investigation Report ("PSI") ¶¶ 5-13 (CR409-147).

3

direct appeal.

## II.   FAILURE TO FILE OR CONSULT ABOUT AN APPEAL

Fields asserts in his § 2255 motion that he specifically asked Crawford to file an appeal of his sentence.   Doc. 1 at 5.   Later, after he secured counsel, the Court allowed Fields to amend his petition to assert that his attorney failed to consult with him about an appeal despite having a duty to do so.   Doc. 28; *see Cunningham v. United States*, 378 F. App'x 955, 958 n. 1 (11th Cir. 2010) (a claim that an attorney was ineffective in failing to file a notice of appeal subsumes the related question of whether the attorney had a duty to consult).   The Court held an evidentiary hearing on August 23, 2011 in order to develop the facts necessary to resolve these contentions.

The Supreme Court's opinion in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), furnishes the proper legal framework for analyzing such ineffective-counsel claims.   It is well settled that the Sixth Amendment guarantees a defendant the right to "'reasonably effective'" assistance of counsel during criminal proceedings.   *Id.* at 476 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).   It is equally established "that a

lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. at 477. Because a defendant is entitled to a direct appeal from his conviction as a matter of right, *Rodriguez v. United States*, 395 U.S. 327, 329-30 (1969), "an attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995).

Even when a defendant fails either to express or disavow any interest in an appeal, the Supreme Court made clear that "in the vast majority of cases," *Flores-Ortega*, 528 U.S. at 481, an attorney has a duty to consult with his client about an appeal, advising him of the advantages and disadvantages of taking an appeal and making a reasonable effort to determine his client's specific wishes. *Id*. at 478-79. The Court, however, refused to adopt a per se rule that counsel has a duty to consult in every case. *Id*. at 479 (noting that while it is "the better practice" for counsel to consult with his client about an appeal, "[w]e cannot say, as a

*constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable").

Under the *Strickland* standard, then, a federal court must gauge the objective reasonableness of an attorney's failure to consult with his client about an appeal by conducting a "circumstance-specific" inquiry, *id.* at 478, taking "into account all the information counsel knew or should have known." *Id.* at 480. A constitutionally imposed duty to consult arises where, under the totality of the circumstances, "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*

At the evidentiary hearing, Fields testified that prior to entering his guilty plea in this case his attorney told him that his sentence "was going to be much [more] severe" than in the earlier drug conspiracy case. Tr. at 12. While he conceded that Mr. Crawford discussed the potential guidelines sentencing range on the new conspiracy charge, Fields stated that counsel never told him that he would receive a career offender

enhancement and that he did not become aware of the enhancement until he received the PSI.[3]  *Id.* at 12-13.  He "was shocked" to learn that his status as a career offender resulted in the guidelines range of 262 to 327 months, for he had been "hoping" for a sentence of around 10 years.  *Id.* at 13.  Fields asserted that if he had known about the career offender enhancement, he would never have signed the plea agreement.  *Id.* at 12.  Once he reviewed the PSI with Crawford, he indicated a desire to object to the "drug amounts" calculated by the probation officer in an effort to lower his guideline range.  *Id.* at 13-14.  Instead of filing an objection, Crawford submitted a sentencing memorandum that failed to challenge the drug amount attributed to Fields by the probation officer.  *Id.* at 14.

According to Fields, immediately after his 262-month sentence was pronounced he informed Crawford that he wanted to appeal his sentence.  *Id.* at 16.  Although Crawford promised to come see him "in a couple days," he never appeared and never returned the repeated phone calls made by Fields and members of his family in the weeks following the

---

[3] The PSI was prepared and furnished to counsel in January 2010, PSI at 1, a month after Fields had received a 135-month sentence in CR408-315.  *Id.* at 9 ¶ 33 (reflecting that sentencing in CR408-315 occurred on December 7, 2009).

sentencing proceeding. *Id.* When he finally reached his attorney, Crawford stated that "we missed the deadline."[4] *Id.* at 18.

Fields called additional witnesses in support of his claim that he asked Crawford to file an appeal. His wife testified that when she spoke to Crawford outside the courtroom just after sentencing, he told her that Fields had indicated "he wanted to appeal," *id.* at 47, and that he intended to visit his client to discuss the matter further. *Id.* at 48. When Fields informed her two days later that Crawford had not come, she called and left numerous "detailed messages" concerning Fields' desire to appeal both with Crawford's secretary and on his cell phone. *Id.* at 48. Fields' sister and mother similarly testified that Crawford informed the family outside the courtroom that Fields had indicated a desire to appeal and that he intended to speak with Fields further about the matter. *Id.* at 52, 56, 57.

Mr. Crawford gave a very different picture of the events leading up to and following the sentencing proceeding. First, Crawford was

---

[4] In September 2009, Fields wrote a letter to the sentencing judge complaining that his attorney had failed to file an appeal. That letter was docketed as a pro se Notice of Appeal. Cr. doc. 99. The Eleventh Circuit later found that the letter was not a proper Notice of Appeal and in any event was untimely. Cr. doc. 113.

adamant that at his very first meeting with Fields following his arrest on the new conspiracy charge, he informed Fields that he now qualified as a career offender under the sentencing guidelines. *Id.* at 63. Crawford noted that the prosecutor had specifically referenced Fields' career offender status when he telephoned to inform Crawford of his client's arrest on new drug charges. Crawford assured Fields that even if he bargained for and received a concurrent sentence on the second conspiracy charge, "the second sentence was going to be a great deal longer than the first." *Id.* at 65. Because the government had a tape recording of Fields negotiating a drug deal with his cousin, *id.* at 62, Crawford recommended that he accept a government plea offer in order to receive acceptance of responsibility, avoid the risk of damaging witness testimony at trial that might increase his "relevant conduct" and further lengthen his sentence, and secure a government recommendation that the sentence for the new conspiracy case be served concurrently with the earlier sentence.[5]

Crawford acknowledged that Fields indicated a desire to challenge

---

[5] Crawford testified that the prospect of receiving a consecutive sentence for the second drug conspiracy was Fields "biggest concern." Tr. at 64.

the probation officer's PSI finding that he was responsible for 81.2 grams of crack cocaine, reasoning that he should not be credited with the one-ounce (28.35 gram) quantity seized from a vehicle occupied by his cousin and another individual. Crawford explained, however, that even if he prevailed on this challenge the total amount of drugs would not be reduced to less than 50 grams and thus his guideline sentence range would remain the same. *Id.* at 66.[6] According to Crawford, "Fields understood and agreed" that it would not be beneficial to file an objection to the PSI's drug amount calculations. Instead, with his client's approval, Crawford filed a sentencing memorandum contending that the imposition of the career offender enhancement would result in an unreasonable sentence given the particulars of the case. *Id.* at 66-67. He urged the district judge "to consider a sentence of 200 months." Cr. doc. 109 (Sent'g Tr.) at 5.

---

[6] "Pursuant to § 2B1.1(c)(5), drug offenses involving at least 50 grams but less than 150 grams of cocaine base have a base offense level of 30. Since this case involved 81.2 grams of cocaine base the base offense level of 30 is warranted." PSI at 7 ¶ 20. As Crawford correctly noted, reducing the 81.2 gram amount by only 28.35 grams, (yielding 52.85 grams), would still result in a base offense level of 30. (Because Fields was a career offender within the meaning of U.S.S.G. § 4B 1.1, his base offense level was increased to 37.) PSI at 7 ¶ 27.

At sentencing, the district judge made clear that he was troubled by the fact that "this defendant is paying a high price for having been designated as a career offender under the Federal Sentencing Guidelines." *Id.* at 13. Nevertheless, the Court ultimately found "no reason to depart from the sentence called for by application of the advisory guidelines," *id.* at 12, noting both that the "defendant continued to be responsible for distributing significant quantities of cocaine after having been convicted of two prior felony drug offenses" and that he "was awaiting sentence on another unrelated federal drug distribution case when he committed the instant offense." *Id.* at 12, 13. The district judge then imposed a 262-month sentence, which was at the very bottom of the guidelines range, and directed that that sentence be served concurrently with the 135-month sentence Fields had received a few months earlier in *Smalls*, No. CR408-315. Cr. doc. 109 at 12.

Crawford testified that prior to sentencing he discussed with Fields his right to appeal the sentence. Tr. at 68. Crawford stated that at no point during the sentencing hearing did Fields indicate that he wished to file an appeal. *Id.* at 69, 74. When several of Fields' family members

approached Crawford just outside the courtroom and asked if Fields could appeal, Crawford said that Fields had the right to an appeal but that he could not think of any meritorious grounds "off hand." *Id.* at 69. He told the family to let him know if Fields wished to appeal. Crawford emphasized that Fields' wife, Catrena, had his personal cell phone number and had called him frequently in the preceding year and a half to speak about her husband's case and arrange 3-way calls with Fields. *Id.* at 69-70. Crawford stated emphatically that no one ever called him or communicated with him in any fashion regarding Fields' interest in an appeal. *Id.* at 69-70, 74. His cell phone records would confirm this, he explained.

The testimony of these various witnesses cannot be reconciled as to several salient points necessary to the resolution of Fields' motion. The Court is therefore required to make credibility choices in determining the relevant facts. After observing the demeanor of these witnesses and considering their testimony, the Court is persuaded that Mr. Crawford is far and away the more believable witness and, where there is a conflict in the testimony, it specifically adopts Mr. Crawford's version of the events.

Thus, the Court finds that within a few days of his arrest on the second conspiracy charge, Fields knew that he now qualified as a career offender and was facing, as he put it, a "much [more] severe" sentence than on the charges set out in the earlier indictment. Tr. at 12. The AUSA who called Crawford to inform him of Fields' arrest for a new drug crime specifically mentioned that, given his prior record, Fields was subject to the career offender enhancement required by § 4B1.1 of the guidelines. *Id.* at 63. This information was of such critical importance, and would have such a dramatic impact during any future sentencing proceeding, that Crawford immediately relayed the information to Fields during their initial post-arrest meeting. Fields' contrary testimony that he did not learn of the career offender enhancement until he received the PSI is simply not believable. The Court further accepts Crawford's testimony that Fields' chief concern was the possibility than any sentence he received on the new drug charge would be made consecutive to any sentence on the original drug charge.

For these reasons, the Court is unpersuaded by Fields' testimony that he was "shocked" that the PSI treated him as a career offender and

exposed him to a much greater sentencing guidelines range that he would have faced without the enhancement. The Court finds that Fields knew at the time he entered his plea of guilty to the second conspiracy charge that he was facing a significantly longer sentence because he was now a career offender.

Nor does the Court credit his testimony that he "hoped" to receive a 10-year sentence when he appeared before the district judge. Fields well knew by this point that a 10-year (or 120-month) sentence was not in the cards, for he had already been sentenced to 135 months for the earlier conspiracy offense and recognized that he was facing a far more severe sentence for the second conspiracy. Fields clearly understood, therefore, that his sentence in this case would likely be considerably longer than 135 months. His testimony that he was expecting around 120 months is self-contradictory and utterly unbelievable.

Finally, the Court accepts Crawford's testimony that neither Fields himself nor any member of his family ever requested that an appeal be filed. Fields' greatest concern -- that the district judge would make the second sentence consecutive to the first -- was relieved once the judge

pronounced sentence. While the judge refused to set aside the career offender enhancement as Crawford urged him to do, he imposed a sentence at the very bottom of the guidelines range and directed that this sentence run concurrently with the earlier-imposed sentence of 135 months. Thus, Fields received a total of 262 months, rather than the 397-month period of custody that he would have received had the district judge opted for consecutive sentencing. From his discussions with Crawford prior to sentencing, Fields knew that he was entitled to appeal his sentence, and the district judge again informed him of this right. Crawford felt there were no meritorious grounds to appeal since the judge had imposed a sentence within the guidelines range,[7] and he conveyed his belief to Fields' family after sentencing. Perhaps Fields was pleased that he received a concurrent sentence and understood that a sentence within the guidelines range was largely unchallengeable. Whatever the

---

[7] Absent allegations suggesting that the district court "mistakenly believed that it did not have the authority to depart downward from his criminal history category," a refusal to depart downward is not reviewable on appeal. *See, e.g., United States v. Arce-Negron*, 348 F. App'x 530, 532 (11th Cir. 2009) (citing *United States v. Chigbo*, 38 F.3d 543, 546 (11th Cir. 1994)). Here, the district judge recognized the advisory nature of the guidelines and his ability to impose a sentence below the guidelines range. Cr. doc. 109 at 4, 8, & 12.

reason, Fields never requested an appeal. But neither did he instruct counsel not to appeal.

This factual finding, that Fields never made clear his wishes about an appeal, requires the Court to assess three additional issues: (1) did Crawford properly consult with his client about an appeal; (2) if not, did Crawford have a duty to consult under the particular circumstances of this case; and (3) if Crawford had, but failed to honor, a duty to consult, has Fields shown that he suffered any prejudice as a result. *Flores-Ortega*, 528 U.S. at 478, 484.

It is undisputed by the government that Crawford did not "consult" with Fields about an appeal. Doc. 36 at 6. *Flores-Ortega* used that term "to convey a specific meaning -- advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the client's wishes." 528 U.S. at 478. Crawford did neither. He admitted that he never asked Fields whether he wanted to appeal or even visited him after sentencing. Tr. at 70-71. While Crawford did tell Fields *prior* to sentencing that he had the right to appeal, and told his family afterward that he saw no meritorious grounds

for an appeal, "[s]imply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense." *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007).

Since Crawford did not consult with Fields about an appeal, the Court must determine whether he had a duty to do so under the specific circumstances of this case. In *Flores-Ortega*, the Supreme Court gave this example of an objectively reasonable decision by counsel not to consult with his client:

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2-year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," *id.*, at 691, as a constitutional matter, in not consulting with such a defendant regarding an appeal.

528 U.S. at 479. The government contends that this example precisely fits the facts of this case and requires a finding that Crawford had no duty to consult with Fields about an appeal. Doc. 36 at 2-6.

As noted earlier, Fields never gave any indication that he was

interested in appealing. The question before this Court, therefore, is whether a rational defendant standing in Fields' shoes would have wanted to appeal. *Flores-Ortega*, 528 U.S. at 479. Under *Flores-Ortega*, a defendant who receives the sentence he bargained for and expected, and who fails to express any interest in appealing, generally cannot establish that his attorney had a duty to consult where the attorney reasonably believed that there were no potentially meritorious grounds to assert on appeal. *Id.* This case, of course, involves not a 2-year sentence (as in the Supreme Court's example) but a sentence of nearly *22 years*. But the Supreme Court nowhere suggested that only relatively short sentences could support a finding that counsel had no duty to consult. Rather, it emphasized that the reasonableness of an attorney's failure to consult must be subjected to a "circumstance-specific" inquiry. *Id.* at 478. The prospect of a 20-year sentence, for example, could be considered an excellent bargain where a defendant is facing a real risk of life imprisonment or the death penalty. So, the length of the sentence imposed is but one factor to be considered, and it is a factor to be taken in context as part

of the totality of the circumstances of the particular case.

This case involves a defendant who, because of the nature of the crime and his criminal history, faced an upper guidelines range of nearly *30 years*. PSI at 15 ¶ 51 (upper range of 327 months). Further the Court could have made such a 327-month sentence *consecutive* to an earlier-imposed 135-month sentence. While the sentence exposure here was much greater than in the example given in *Flores-Ortega*, the fact remains that Fields, like the hypothetical defendant mentioned by the Supreme Court, knew the probable sentencing range he was facing, elected to plead guilty anyway, received a sentence at the very bottom of the guidelines, and obtained the outcome he was hoping for (i.e., a concurrent rather than a consecutive sentence). True, Crawford was unsuccessful in his attempt to persuade the Court that imposing the career offender enhancement yielded an unreasonable sentence under the particular facts of the case, but Fields has never claimed that he was given any assurance that the district judge would likely sentence him below the advisory guidelines range. His sentence of 262 months was nearly

twice as long as the earlier 135-month sentence, but Fields testified that he expected to receive a "much [more] severe" sentence for the second drug conspiracy (committed while he was on pretrial release for the first conspiracy).

Since Fields never expressed any interest in appealing the rather lengthy sentence that he fully expected to receive, and since Crawford could think of no nonfrivolous grounds to raise on appeal, under the circumstances of this case the Court concludes that Crawford, like the attorney hypothesized in *Flores-Ortega*, had no duty to consult with his client about an appeal.[8]

## III. REMAINING CLAIMS

In Fields' second ground for relief, he contends that Crawford performed deficiently by failing to preserve an untimely appeal he filed in September 2010. Doc. 1 at 5-6. That appeal was dismissed sua sponte

---

[8] Even if Crawford had a duty to consult, the Court rejects Fields' assertion that he would have asked Crawford to file an appeal on his behalf. The simple facts are that Fields showed no interest in pursuing an appeal until after the FSA went into effect, which the Court believes to be the true reason he sought to reopen the case for direct review. Consequently, even if Crawford had a duty to consult, Fields has not established prejudice. *See Flores-Ortega*, 528 U.S. at 484 (to establish prejudice, a movant must "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed").

for lack of jurisdiction on November 10, 2010, after Crawford paid the appellate filing fee and requested transcripts of Fields' Rule 11 and sentencing hearings. Cr. doc. 113 (Eleventh Circuit order dismissing case); cr. docs. 106 & 107 (transcript requests); cr. doc. 105 (note that filing fee had been paid). The Eleventh Circuit concluded that Fields' letter, which the district judge construed as a "notice of appeal," "did not indicate the requisite intent to appeal, and is not effective as a notice of appeal." Cr. doc. 113 at 1.

Crawford went above and beyond the call of duty by immediately taking action upon receiving news that Fields had filed an *untimely* notice of appeal. The Court cannot conceive of any other actions Crawford could have taken to prevent the sua sponte dismissal of that case; hence he did not render deficient performance in that regard.

In Ground Three, Fields contends that he was misled as to his appellate rights "as early as the signing of the plea agreement." Doc. 1 at 6-7. He states that he pled guilty based upon anticipated changes in the law that would have the effect of reducing the sentences for crack cocaine offenses. *Id.* As the government points out, while Fields complains he

was misled as to his "appeals rights," he is effectively raising a claim that Crawford coerced him into pleading guilty based upon his promise that the sentence would be reduced on appeal.   Doc. 8 at 10.

Where a movant enters a plea of guilty and then collaterally challenges it as involuntary due to constitutionally deficient representation, he must first demonstrate that his attorney's performance was deficient, which requires a showing that counsel's advice regarding the plea was outside the "range of competence demanded of attorneys in criminal cases."   *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see Tollett v. Henderson*, 411 U.S. 258, 267 (1973).   Then he must demonstrate that the defective performance prejudiced the plea process to such a degree that the plea cannot be trusted.   *Hill*, 474 U.S. at 59.   To meet the prejudice prong in this context, Fields must show that there is a reasonable probability that but for counsel's errors he would not have pled guilty and would have insisted on going to trial.   *Hill*, 474 U.S. at 59.

At Fields' plea hearing, the district judge advised him that "what your lawyer has told you about the sentence that you may receive is only a

guess or estimate." Cr. doc. 108 at 14. Fields affirmed that he understood. *Id.* He also agreed that his lawyer had not told him an "exact sentence that w[ould] be imposed" or made "any promises about th[e] case" that were not disclosed to the Court. *Id.* at 17. In sum, Fields' plea hearing admissions undercut his claim that his plea was premised upon Crawford's promise of a reduced sentence on appeal.[9] This claim also fails.

In Fields' fourth claim, he contends that the government and this Court provided ineffective assistance of counsel by failing to apply prospectively potential reductions in the mandatory minimum sentences for crack cocaine offenses. Doc. 1 at 7-8. Of course, neither the government nor this Court was acting as Fields' counsel; hence the claim, as phrased, fails. Moreover, he can point to no wrongdoing on the part of

---

[9] Fields' "solemn declarations" before the district judge "carry a strong presumption of verity" and rightly constitute a "formidable barrier" for him to overcome in these collateral proceedings. *Cross v. United States*, 2009 WL 211418 at * 8 (S.D. Ga. Jan. 27, 2009) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514 n. 4 (11th Cir. 1986). The only way Fields could conceivably undermine his sworn declarations, then, would be to show both that he swore falsely and that he did so due to some failing by his attorney. He has not come close to meeting that burden.

the government or this Court for applying the law as it was written at the time of his sentencing.

## IV. CONCLUSION

For the forgoing reasons, all of Fields' claims fail, and his § 2255 motion, doc. 1, should be **DENIED**. Moreover, applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this ___23rd___ day of November, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

24